Docusign Envelope ID: A8AAD9B3-08A0-4963-A7DE-3A01920DBBA1

Richard G. Grant
Tex. Bar No. 08302650
CMLaw PLLC
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, Texas 75240
Telephone: 214-210-2929
Email: lwarman@cm.law
Email: rgrant@cm.law

ATTORNEYS FOR
INNOVATE LOAN SERVICING CORPORATION

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 24-42243-11 |
| | § | Chapter 11 (Subchapter V) |
| INNOVATE LOAN SERVICING | § | |
| CORPORATION, | § | |
| | § | |
| Debtor. | § | |

**FIRST MODIFIED**
**JOINT CHAPTER 11, SUBCHAPTER V PLAN OF REORGANIZATION**
**OF INNOVATE LOAN SERVICING CORPORATION**
**D/B/A INNOVATE AUTO FINANCE**

Dated: November 4, 2024

# I.    INTRODUCTION

## A.    First Modification to Plan

This First Modified Joint Chapter 11, Subchapter V Plan of Reorganization of Innovate Loan Servicing Corporation d/b/a Innovate Auto Finance (as modified and supplemented, the "Plan") modifies and restates the *Joint Chapter 11, Subchapter V Plan of Reorganization of Innovate Loan Servicing Corporation d/b/a Innovate Auto Finance* (ECF 73), as supplemented by the *Notice of Supplement to List of Assumed Contracts under Joint Plan* (ECF 87).

## B.    Description and History of the Debtor's Business

Innovate Loan Servicing Corporation d/b/a Innovate Auto Finance (the "Debtor") is a Texas corporation with principal offices at 3001 Meacham Blvd., Fort Worth, Tarrant County, Texas 76137. The Debtor is actively engaged in business and commercial activities. The Debtor is a Chapter 11, Subchapter V Debtor.  The Subchapter V Trustee of the Debtor is Areya Holder Aruzada.

The Debtor's primary business is loan servicing for auto loan receivables. It has approximately 18 primary clients holding auto receivables in excess of $92.5 million. The Debtor services the auto receivables by (a) receiving payments from borrowers; (b) coordinating repossessions, auctions and sales; (c) coordinating the collection of client receivables; and (d) depositing such collections in segregated trust accounts for the clients. The Debtor withdraws fees from the trust accounts solely for services and expenses in accordance with the servicing agreements with the clients.

As of January, 2024, the board of directors of the Debtor consists of Preston Miller, Nathaniel Redleaf and John Griggs. The officers of the Debtor include Preston Miller as CEO/President, Stephen Seidel as CIO & COO, and Raymond Scott as CLO and CCO. The sole wholly owned subsidiary of the Debtor is IC Depositor, LLC, a Delaware limited liability company, which is not in bankruptcy. The Debtor has 26 employees. Attached hereto as **Exhibit A** is a diagram reflecting the Debtor's corporate structure.

The Debtor's principal office is located at 3001 Meacham Blvd., Fort Worth, Tarrant County, Texas 76137. The Debtor leases its principal office but otherwise owns no real property. The Debtor's utilities (gas, electricity, sewer and water) are provided by the Debtor's landlord. The Debtor has no other utilities other than various telecommunication services, which are provided by nongovernmental vendors.

The Debtor has no primary secured lenders. As of the Petition Date, the Debtor's total unsecured debt totaled approximately $2.6MM, primarily consisting of unpaid vendor expenses. The Debtor's primary assets consist of cash, receivables and FF&E with a book value of $916,000. The Debtor's most recent statement of operations (May 2024) reflected approximately $300,000 in monthly revenue and approximately $330,000 in monthly expenses, with a net loss of approximately $30,000. As of the Petition Date, the Debtor had cash deposits of approximately $192,000.





The Plan provides for the cancellation of the stock of and interests in the Debtor. The Plan provides for (a) the issuance of new common stock to Car Capital Technologies, Inc., a Delaware corporation ("Purchaser"); (b) the release of all Avoidance Actions by the Debtor; (c) payment of the Class 3A Convenience and customer refund claims; and (d) payment of the Cure Amounts, all in exchange for a payment to the Disbursing Agent (for the benefit of the Debtor's creditors) of $475,000 (the "Purchase Price"). The Purchase Price is in excess of (a) the amount creditors could hope to achieve in a liquidation of the Debtor under Chapter 7 and (b) the net present value of the projected disposable income of the Debtor over the 3 year period following the estimated effective date of the Plan. Attached hereto as **Exhibit C** is a calculation and estimation of the Debtor's projections of disposable income over 3 years following the date hereof and a calculation of the net present value of the projected disposable income.

This Plan is a joint Plan of Reorganization sponsored by the Debtor and the Purchaser (collectively, the "Plan Proponents").

The Plan proposes to pay administrative claimants or priority claimants in a lump sum on the Effective Date, as soon as thereafter as such claims are allowed. The Plan proposes to distribute the remaining amount of the Purchase Price to the secured (if any) and unsecured creditors as set forth below.

## C.    Explanation of Chapter 11

Chapter 11 is the primary reorganization chapter under the Code. Debtor is a small business and has decided to proceed under Subchapter V – Business Debtor Reorganization ("Subchapter V"). Under Subchapter V, the Debtor is permitted to reorganize its business for the benefit of its creditors, equity interest holders, and itself. As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. After such Plan has been filed, it must be accepted by claimholders and equity interest holders or determined by the Court to be fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the Plan.

## D.    Explanation of the Confirmation Process

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As discussed below, Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order to be confirmed by the Court.

Confirmation of the plan discharges the Debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the Debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

E.    **Voting Procedures**

**Administrative Claims.** Administrative Claims are not classified and do not vote under the Plan.

**Unimpaired Class**. The Debtor is not aware of any priority claims. To the extent that any exist, they are unimpaired by the Plan and not entitled to vote.

**Impaired Class**. The Class 2 Claimants are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Class 2. Each holder of an Allowed Claim in Class 2 may vote on the Plan by completing, dating, and signing the ballot sent to the holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Richard G. Grant CMLaw PLLC, National Litigation Support Center, 13101 Preston Road, Suite 110-1510, Dallas, Texas 75240 or via email at rgrant@cm.law. To be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

F.    **Best Interests of Creditor Test**

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In this case, the Debtor is not aware of any secured creditors. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors would receive a maximum of **$234,245** (see Liquidation Analysis attached hereto as **Exhibit D**). Accordingly, since the Plan proposes to the Debtor's creditor more than that, such creditors would receive more money under the Plan than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

The Plan provides for the release of all Avoidance Actions. Avoidance Actions means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by any of the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law.  Section 547 of the Bankruptcy Code permits the trustee to avoid and recover from creditors preference payments made within the 90-day period before the bankruptcy filing. A "preference" is defined by Section 547 of the Bankruptcy Code as (a) payment on an "antecedent" (meaning a previously incurred as opposed to current) debt; (b) made while the debtor was insolvent (meaning its assets are less than its liabilities); (c) to a creditor, within 90 days of the filing of the bankruptcy (or 1 year, if an

insider); (d) that allows the creditor to receive more on its claim than it would have, had the payment not been made and the claim paid through the bankruptcy proceeding. No payments to insiders on account of antecedent debts were made within 1 year of the Petition Date. The payments made to creditors within 90 days of the Petition Date are described in **Exhibit F** attached hereto. The Debtor has analyzed the payments and determined that each payment was made in the ordinary course of business in accordance with typical business terms on the due date of each payment. Accordingly, the Debtor places little value on the Section 547 Claims and any other of the Avoidance Actions.

## II.      FINANCIAL PICTURE OF THE DEBTOR

### A.      Financial History and Background of the Debtor

Attached hereto collectively as **Exhibit B** are the Debtor's (a) three-year trailing annual balance sheet and statement of operations (Exhibit B1) and (b) twelve-month trailing monthly balance sheet and statement of operations (Exhibit B2).

Innovate Loan Servicing Corporation ("ILS") was originally formed in 2009 and began operations in 2010. In September 2010, ILS raised $50 million in equity capital from three funds managed by Luxor Capital, LLC. This investment was made through a holding company Innovate Managed Holdings, LLC. ("IMH"). IMH is owned by the Luxor entities and management and its only asset is its investment in 100% of the common stock ILS.

ILS is an independent third-party servicer of consumer loans with a strong presence in the auto finance marketplace. ILS was founded as an acquirer and servicer of subprime loan portfolios. Beginning in 2016, ILS began to focus on the servicing of portfolios for others and de-emphasized the acquisition of portfolios. Today, ILS provides a full spectrum portfolio of services primarily to the auto finance market. ILS offers traditional performing loan servicing, asset recovery and remarketing services, and loan origination services for investors looking to invest in the marketplace. Each of these services may cater to different market participants and provide diversified revenue streams based on the where we are in the economic cycle.

ILS operates its servicing platform from its offices in Fort Worth Texas. ILS leverages cloud-based SaaS solutions combined with integrated subscription services to deliver servicing operations. There is also an integration with our SaaS loan origination platform for seamless boarding of loans upon approval and funding.

ILS has been significantly affected by the downturn in the auto finance market since 2022. As a servicer for others, ILS is dependent on the investment of others for growth in its business. Unlike prior down cycles in auto finance, this cycle has been exacerbated by the combination of auto market specific issues (inventory supply issues, used car valuations, etc.) and macro-economic issues (low unemployment, excess consumer cash flow due to government stimulus spending, etc.). These factors led to a "bubble" in the auto finance market going into 2022. Beginning in Q2 2022, as rates increased and dynamics surrounding consumer cash flows began to change, the bubble burst. Investors began to avoid investments in the auto finance market due to ongoing credit and investment return concerns.

ILS had multiple partners originating loans into Q3 2022 and it was the servicer for each loan originated. ILS's platform was generating $20+ million of new loans per month and providing servicing for portfolios totaling more than $225+ million. In Q3 2022, these partners discontinued their originations programs and have not restarted them. This placed the ILS servicing portfolio into a liquidation mode. Since 2022, ILS has added several small new clients and portfolios but has not added a new originator. Currently, ILS's servicing portfolio is approximately $70 million.

This abrupt discontinuation of the origination business and subsequent liquidation of the portfolios forced ILS to downsize immediately and to continue downsizing for the past two years. The discontinuation of originations resulted in ILS cancelling multiple contracts that had what became onerous minimum usage charges in the downsized environment in which the Company was operating. These vendors continued to bill the contractual minimum amounts due even though the services were never used and in several cases were not even available to be used. The ongoing liquidation of the servicing portfolio has also led to several other vendor contracts to become onerous. Many of the other vendor contracts are based on the number of employees using the systems and ILS has downsized its staff from close to 100 employees to currently approximately 30 employees. These other vendor contracts continue to be paid as they are vital to the operations of the company. ILS has attempted to renegotiate these other vendor contracts without success in the last year. The liquidation of the portfolio has reached a point to where the revenue generated is not enough to continue paying these expenses at the current levels.

**B.** <u>**Liquidation Analysis**</u>

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit D**.

**C.** <u>**Procedural history of the Debtor**</u>

The Debtor filed a voluntary petition initiating this Chapter 11 (Subchapter V) proceeding on June 28, 2024.

On July 1, 2024 for, the debtor filed a number of "first day" motions including its Motion to Maintain Bank Accounts [ECF 3]; its Motion to Establish Procedures and a Short Service List [ECF 4]; and Application to Employ Culhane, PLLC (a/k/a CMLaw PLLC) as Attorneys for the Debtors [ECF 7]. In addition, the Debtor filed the Declaration of Preston Miller in Support of Debtor's First Day Motions [ECF 5]. Each of these motions were granted.

On July 1, 2024, the Office of the United States trustee appointed Areya Holder Aurzada as the Subchapter V Trustee in this case. On July 16, 2024 the debtor filed its Schedules and Statement of Financial Affairs in the Case. On August 1, 2024, the Office of the United States Trustee conducted the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code.

On August 15, 2024, the Debtor filed its Motion to Approve Premium Financing to Support Purchase of Insurance [ECF 52]. This motion was approved by the Court.

On August 15, 2024, the Debtor filed its Pre-Status Conference Report Under Subchapter V of the Bankruptcy Code. The court held the Subchapter V status conference on August 29, 2024.

On September 25, 2024, Debtor's bankruptcy counsel, CMLaw, PLLC filed its application to drawdown its prepetition retainer [ECF 71]. On the Petition Date, Culhane held a post-petition retainer balance of $56,712.00 for the Debtor. The request included $46,458.00 in attorneys' fees and $1,111.89 in expenses (totaling $47,577.89) through August 31, 2024. After the draw, a retainer balance of $9,134.11 will remain. Anticipated counsel fees of September 1, 2024 through confirmation are estimated at $25,000 ($15,865.89 after retainer offset).

D.     **Post-Confirmation Management**

The Debtor will continue managing its business after confirmation. The prepetition officers and directors will continue to manage the Debtor at the same historical compensation after confirmation at the discretion of the Purchaser, as the new shareholder. There are no known agreements or promises between such officers and directors with the Purchaser other than as set forth herein.

## III.     CLASSIFICATION OF CLAIMS AND TREATMENT OF CLAIMS

This Plan of Reorganization (the Plan) under chapter 11 (Subchapter V) of the Bankruptcy Code (the Code) proposes to pay creditors of the Debtor in distribution(s) on the Distribution Date with respect to Allowed Claims from the Plan Cash Fund funded by the Purchase Price.

The Plan provides for unclassified claims (under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes) as follows:

| | |
|---|---|
| **Administrative Claims** | Unimpaired – Not entitled to vote<br><br>Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan, in cash from the Plan Cash Fund, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| **Priority Tax Claims** | Impaired – Not Entitled to Vote<br><br>Each holder of an allowed priority tax claim will be paid in equal monthly installments consistent with 11 U.S.C. § 1129(a)(9)(C) at 8% per annum or earlier in one or more prepayments as determined by the Reorganized Debtor. |
| **Subchapter V Trustee Fees** | All fees required to be paid under 28 U.S.C. § 586(e) that are owed on or before the effective date of this Plan have been paid or will be paid on the Effective Date from the Plan Cash Fund. |
| **Statutory Fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the Effective Date. |

The Plan classifies the remaining claims of creditors and interest holders as follows:

| **Class 1**<br>**Secured Claims**<br><br>Includes all claims allowed under 11 U.S.C. § 506**.** | Unimpaired – Not Entitled to Vote (deemed to accept)<br><br>Any Holders of Allowed Secured Claims shall receive, at the option of the Debtor, (i) the legal, equitable and contractual rights of the Allowed Secured Claim will remain unaltered, and the Holder of such Claim shall retain any Liens and/or security interests securing such Claim, or (ii) the Debtor will provide other treatment that will render such Secured Claim Unimpaired under section 1124 of the Bankruptcy Code. Class 2 is Unimpaired. |
| --- | --- |
| **Class 2**<br>**Priority Unsecured Claims**<br><br>Includes all allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8). | Unimpaired – Not Entitled to Vote (deemed to accept)<br><br>Each holder of an Allowed Class 2 Priority Claim will be paid in full on the Distribution Date |
| **Class 3**<br>**General Unsecured Claims**<br><br>Includes all allowed claims under 11 U.S.C. § 502 other than Secured Claims and Priority Unsecured Claims | Impaired – Entitled to Vote<br><br>Each holder of an Allowed Class 3 General Unsecured Claim will receive a Pro Rata portion of the Unsecured Claims Distribution Fund on the Distribution Date with respect to such holder. |
| **Class 3A**<br>**Convenience Claims**<br><br>Includes all Allowed General Unsecured Claims under $500 or which constitute Consumer Finance Protection Bureau refund obligations to auto loan consumers | Unimpaired – Not Entitled to Vote (deemed to accept)<br><br>Each holder of a Allowed Class 3A Claim will be paid in full on the Distribution Date in an aggregate amount not to exceed $38,000 |
| **Class 4**<br>**Subordinated Claims**<br><br>Includes all claims subordinated pursuant to 11 U.S.C. § 510 | Impaired – Not Entitled to Vote (deemed to reject)<br><br>No distributions |

| **Class 5**<br>**Equity Interests**<br><br>Includes all interests of equity security holders of the Debtor | Impaired –<br>Not Entitled to Vote (deemed to reject)<br><br>All equity interests in the Debtor are cancelled as of the Effective Date. |
|---|---|

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

## IV.   MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtor will continue operating its business as the Reorganized Debtor. The Debtor's Plan will break the existing claims into five (5) classes of Claimants and Equity Owners.

### A.   Satisfaction of Claims and Debts:

The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article IV of this Plan shall be the sole and exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor.

All Allowed Claims shall be paid by the Disbursing Agent from the Plan Cash Fund as described in Article III hereof and shall be paid (or reserved) as follows:

- First, to the payment of Allowed Administrative Claims, Cure Payments, Allowed Priority Tax Claims, Statutory and Subchapter V Trustee Fees;

- Second, to the payment of Allowed Claims in Class 1, Class 2 and Class 3A;

- Third, to the Pro Rata payment of Claims in Class 3.

The Disbursing Agent shall pay the allowed claims of Estate Professionals and the Subchapter V Trustee, and holder of priority claimants, if any, in cash on the Distribution Date. Holders of Allowed General Unsecured Claims shall be paid by the Disbursement Agent on the Distribution Date with respect to each such Claim to occur no earlier than the Objection Deadline.

Except as otherwise agreed by the Holder of a particular Claim, or as provided in this Plan, all amounts to be paid by the Disbursing Agent under the Plan shall be distributed in such amounts and at such times as is reasonably prudent. On the Effective Date, or as soon as practicable thereafter, subject to this Plan, the Disbursing Agent shall: (i) marshal all then available distributable assets in the Plan Cash Fund; (ii) promptly pay the Holders of (a) Allowed Administrative Claims, (b) Allowed Professional Fee Claims, (c) Allowed Priority Tax Claims and (d) the Holders of Allowed Claims in Class 1, Class 2 and Class 3A, as provided for under the Plan; and (v) make interim and final distributions of distributable assets to the Holders of Allowed Class 3 Claims from the Plan Cash Fund in the amounts and according to the priorities set forth in this Plan.

## B.   Mechanics/Implementation of Plan

### 1.   Issuance of Stock in Reorganized Debtor

On the Effective Date, the Debtor shall issue 100% of the common equity interests of the Reorganized Debtor to Purchaser in such number of shares and at such par value as may be designated by Purchaser. On the Effective Date, the Purchaser shall deliver the Purchase Price to the Disbursing Agent to be held in trust for the benefit of holders of Allowed Claims upon the terms specified herein (the "Plan Cash Fund"). Such issuance of equity interests is without representation or warranty.

### 2.   Disbursing Agent

The Debtor shall deliver, or shall cause to be delivered, to the Disbursing Agent the Purchase Price to hold in an escrow account (the "Escrow Account") at such bank selected by the Disbursing Agent subject to the Debtor's consent, which consent shall not be unreasonably withheld (the "Bank"), for the purpose of establishing the Plan Cash Fund, which shall be administered by the Disbursing Agent in accordance with the terms of the Plan and any applicable escrow agreement solely for the benefit of the holders of Allowed Claims.

All distributions under the Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of his duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Plan Cash Fund.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; and (c) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be from the Plan Cash Fund. Payment of professional fees and expenses of the Disbursing Agent in excess of $25,000 shall require Bankruptcy Court approval.

To the extent Cash is distributed under the Plan, no Cash payment of less than $25.00 shall be made to a holder of an Allowed Claim on account of such Allowed Claim, and such amounts shall be retained by Reorganized Debtors.

Unless otherwise ordered by the Court, the Disbursing Agent shall be Preston Miller, in his individual capacity as escrow agent.  On or before the earlier of 30 days following the final distribution from the Plan Cash Fund or six (6) months following the Effective Date, the Distribution Agent shall file a final report of all receipts and disbursements of the Plan Cash Fund.

### C.    **Compliance with 11 U.S.C. §§1191(B), (C) and (D) and Feasibility of Plan**

The Debtor's Plan is based upon paying its unsecured creditors an amount in excess of the Liquidation Value. Accordingly, the Plan satisfies the "best interest of creditors best under 11 U.S.C. § 1129(a)(7) and is fair and equitable within the definition of 11 U.S.C. § 1191(b). The Debtor believes the Plan to be feasible, in that there is reasonable likelihood that the Debtor will be able to make all payments required under the Plan.

## V.    **ALLOWANCE AND DISALLOWANCE OF CLAIMS**

### A.    **Claims Bar Date.**

The Bar Date for all creditors or interest holders, other than governmental units, to file proofs of claim with the Bankruptcy Clerk was September 6, 2024. The Bar Date for governmental units to file Proofs of Claim with the Bankruptcy Clerk was not later than 180 days from petition date, which date is December 26, 2024. In accordance with Bankruptcy Rule 3003(c), any entity or Person whose Claim was listed in the Schedules, or holds a Contingent Claim, Unliquidated Claim, or Disputed Claim, and did not file a proof of Claim before the Bar Date, shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

### B.    **Professional Fee Claims.**

The Disbursing Agent shall pay Professionals all of their respective accrued and Allowed fees and reimbursement of expenses arising prior to the Effective Date, plus reasonable fees for services rendered, and actual and necessary costs incurred, in connection with the filing, service and prosecution of any applications for allowance of Professional Fees pending on the Effective Date or filed and/or served after the Effective Date, plus post-Effective Date fees approved by the Disbursing Agent.

Professionals requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code Sections 327, 328, 330, 331, 503(b) and 1103 or required to file fee applications by order of the Bankruptcy Court for services rendered prior to the Effective Date must file an application for final allowance of compensation and reimbursement of expenses no later than 30 days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court.

### C.    **Administrative Claims.**

The Debtor shall continue to pay postpetition operating expenses accruing and payable on or prior to the Effective Date. Any holder of an unpaid Administrative Claim must file an application for allowance no later than 30 days after the Effective Date. Each Holder of an Allowed Administrative Claim unpaid as of the Effective Date shall receive, from the Plan Cash Funds, without interest, Cash equal to the Allowed amount of such Claim as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim.

**D.** **Claims Administration.**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Disbursing Agent shall have the authority to: (1) file, withdraw, or litigate to judgment, objections to Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer Claims to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

**E.** **Objection Deadline.**

Following the Effective Date, the Reorganized Debtor and the Disbursing Agent shall have standing to object to Claims. Within twenty (20) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court upon motion filed prior to the deadline and after notice and hearing (the "Objection Deadline"), any party in interest may object to any Claim and shall serve a copy of each such objection upon the holder of the Claim to which such objection pertains ("Disputed or Undetermined Claim"). Unless arising from an Avoidance Action, any Proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed or Undetermined Claim may be litigated to Final Order. The Disbursing Agent may compromise and settle any disputed or undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a disputed or undetermined Claim after the Effective Date.

If an objection to a Claim or portion thereof is filed timely, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such disputed Claim ("Disputed Claim") becomes an allowed Claim ("Allowed Claim").

**F.** **Allowance of Claims.**

At the time, and to the extent that a Disputed or Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Claim. No distribution will be made on account of a Disputed Claim unless such claim is allowed by a final non-appealable order.

**G.** **Distributions After Allowance.**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless otherwise required under the Plan or applicable bankruptcy law.

### H. Distribution Date

The Distribution Date shall be a date selected by the Disbursing Agent as soon as practical to occur within 10 business days following the date a Claim becomes an Allowed Claim. The Disbursing Agent shall reserve the pro rata amount allocable to a Claim that is a Disputed Claim until such Claim becomes an Allowed Claim or Disallowed Claim, as the case may be. Partial Disbursements may occur subject to reserves for expenses and Disputed Claim distributions.

## VI. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor rejects all executory contracts and unexpired leases of the Debtor except for those identified on **Exhibit E** (the "Assumed Contracts"), which shall be deemed assumed as of the Effective Date. The cure amounts (the "Cure Payments") for the Assumed Contracts are set forth on **Exhibit E.** All Cure Payments shall be made by the Disbursing Agent from the Plan Claim Fund as soon as practicable within 10 business days following the Effective Date.

Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## VII. EFFECT OF CONFIRMATION OF PLAN

### A. Effective Date and Notice.

The Effective Date of the Plan is a the date selected by Debtor which is a Business Day at least 15 calendar days following the Confirmation Date on which no stay of the Confirmation Order is in effect; provided however, if an appeal of the order confirming the Plan has been taken and a stay of confirmation pending appeal in effect, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

On or before five (5) Business Days after the occurrence of the Effective Date, the Debtors shall mail (or transmit via electronic mail if available) to all holders of Claims and Equity Interests a notice that informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; and (c) such other matters that Debtors deems appropriate.

### B. Binding Effect of Plan.

Upon the Effective Date, the Plan and each of its provisions shall be binding on the Debtor, all Creditors, all Interest holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Interest held by any of them is Impaired under the Plan, whether or not any Claim or Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan. This provision includes all successors and assigns of the parties named herein.

Docusign Envelope ID: A8AA29620BA0-4963-A7DF-3A01920DBBA1

C.      **Vesting of Assets.**

Upon the Effective Date, all assets of the Estate shall vest in the Debtor, except as otherwise provided in the Plan.

D.      **Discharge.**

A consensual plan is one in which the Debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraph (15) but including having all classes of creditors entitled to vote to accept the Plan. If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

A non-consensual plan is one in which the Debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraphs (8), (10), and (15) of section 1129. If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.  Here, the Reorganized Debtor will be discharged upon Substantial Consummation.

E.      **Injunction Against Interference with Plan.**

Upon the Effective Date, all holders of Claims and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan. Additionally, all holders of Claims, all holders of Equity Interest, and all other parties in interest in the Bankruptcy Case shall be enjoined from seeking payment on their Claims or Interest except as otherwise provided in the Plan from Debtor.

F.      **Payments under the Plan.**

Regardless, if the Debtor obtains confirmation the Plan pursuant to § 1191(a) or (b) of the Bankruptcy Code, the Disbursing Agent shall make all payments required under the Plan directly to the creditors of the Estate once the creditors' claim becomes an Allowed Claim. Debtor asserts that cause exists to allow the Disbursing Agent to make all Plan payments as this will reduce administrative costs and provide assurance the Debtor is better able to monitor and maintain its cash flows.

## VIII.   ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. In this case, the Debtors

anticipate there would be no funds available for distributions to unsecured creditors. As set forth above, the Debtor owes approximately $126,000.00 in administrative claims. Claims to the administrative creditors must be paid prior to the unsecured creditors receiving any payment. The amount owed to the unsecured creditors is in the range of $2,000,000 to $2,750,000. The Debtor's other non-exempt asset assets are de minimis. Administrative creditors must be paid before unsecured debts, and therefore, a liquidation would result in a smaller distribution to the unsecured creditors.

The Debtor has investigated many alternative sales of assets under 11 U.S.C. § 363 and other business alternatives to the Plan, including purchases of the Debtor on more lucrative terms, but none have been found or known.

A liquidation analysis is attached hereto as **Exhibit D.**

## IX.   MISCELLANEOUS

### A.   Qualification of Representations

**NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN**

**ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.**

**DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.**

**B.      Retention of Jurisdiction**

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

**C.      Events of Default and Effect Thereof**

Any creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

Richard G. Grant
CMLaw PLLC
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, Texas 75240

and transmitted via electronic mail to rgrant@cm.laws.

**D.      Default Provisions Relating to the Internal Revenue Service**

Default Provision - IRS. Notwithstanding any other provision or term of this Plan or Confirmation Order, the following Default Provision shall control as to the United States of America, Internal Revenue Service ("IRS") and all of its Claims and the IRS Claim:

(1) If the Debtors or Reorganized Debtors fail to pay when due any payment required to be made on federal taxes, Claims of the IRS, the IRS Claim, or other payment required to be made to the IRS under the terms and provisions of this Plan or the Confirmation Order, or fail to timely file any required federal tax return, or if any other Event of Default as defined in the Plan occurs, the IRS shall be entitled to give the Debtors and Reorganized Debtors and their counsel of record written notice of the failure and/or default with demand that it be cured, and if the failure and/or default is not cured within 14 days of said notice and demand, then the following shall apply to the IRS:

(A) The administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code;

(B) The automatic stay of 11 U.S.C. § 362 and any injunction of this Plan or Confirmation Order shall, with regard to the IRS only, lift without further notice or hearing by the Court, and the entire imposed liability owed to the IRS, together with any unpaid current liabilities, may become due and payable immediately; and

(C) The IRS shall have the right to proceed to collect from the Debtors or the Reorganized Debtors any of the pre-petition tax liabilities and related penalties and interest through administrative or judicial collection procedures available under the United States Code as if no bankruptcy petition had been filed and as if no plan had been confirmed.

(2) Failure of the IRS to declare a failure and/or default does not constitute a waiver by the United States of the right to declare that the Debtors or Reorganized Debtors are in default.

(3) The IRS shall only be required to send two notices of failure and/or default, and upon the third event of a failure and/or default the IRS shall be entitled to proceed as set out in paragraphs (A), (B), and/or (C) herein above without further notice to the Debtors, the Reorganized Debtors, or their counsel.

(4) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtors to the IRS.

(5) The term "any payment required to be made on federal taxes," as used in paragraph (h)(1) herein above, is defined as: any payment or deposit required by the Tax Code to be made by the Reorganized Debtors from the Confirmation Date to the date the IRS Claim is together with interest paid in full. The term "any required tax return," as used in paragraph (h)(1) herein above, is defined as: any tax return or report required by the Tax Code to be made by the Reorganized Debtors from the Confirmation Date to the date the IRS Claim is together with interest paid in full.

## E.    **Discharge**

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by 11 U.S.C. § 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

Releases of Claims by Holders of Claims: Except as otherwise specifically provided for herein, upon the entry of the Confirmation Order (a) each Person that votes to accept the Plan or is presumed to have voted for the Plan pursuant to Section 1126(f) of the Bankruptcy Code; and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the entry of the Confirmation Order, each Entity or Person, that has held, holds, or may hold a Claim or interest (hereinafter a "Release Obligor"), in consideration for the obligations of Debtor, Disbursing Agent and Reorganized Debtor under the Plan and the case, shall have conclusively, absolutely unconditionally, irrevocably and forever, released and discharged the Debtor from any Claim or claim of action existing as of the entry of the Confirmation Order arising from, based on or relating to, in whole or in part, the subject matter of, or the transaction or event giving rise to the Claim or claim for relief of such Release Obligor, and any act, omission, occurrence or event in any manner related to such subject matter, transaction or obligation; provided, however, that this provision shall not release Debtor from any cause of action held by a Governmental entity existing as of the entry of the Confirmation Order based (i) the Internal Revenue Code or other domestic state, city or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city or municipality, (iii) any criminal laws of the United States or any domestic state, city or municipality, (iv) the Exchange Act, the Securities Act, or other securities laws of the United States or any domestic state, city or municipality, or (v) Sections 1104-1109 and 1342(d) of the Employee Retirement Income Security Act of 1974, as amended. Nothing in the Plan releases any party from any causes of action or proceedings brought by any governmental entity in accordance with its regulatory functions, including but not limited to criminal or environmental matters.

## F.     Risks to Creditors Under the Debtor's Plan

The risks to Creditors under the Plan include the possible failure of the Purchaser to pay the Purchase Price on the Effective Date, which would likely result in conversion to a Chapter 7 and liquidation of the Debtor's assets.

## G.     Tax Consequences to the Debtor

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## H.     Pending or Anticipated Litigation

The Debtor has evaluated potential claims which may be brought. The Debtor is not aware of any voidable transfer claims.

## I.     Definitions

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the

Docusign Envelope ID: A8AA09630-8A0-4963-A7DE-3A01920DBBA1

singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

   **"Administrative Claim"** shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

   **"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court (any proofs of claim filed by creditors listed as disputed in the *Debtor's Amended Schedules* [ECF 72] shall be deemed timely filed if filed on or before November 18, 2024) and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

   **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

   **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

   **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

   **"Case"** shall mean this Chapter 11 case.

**"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

**"Claimant"** shall mean the holder of a Claim.

**"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

**"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

**"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

**"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

**"Court"** shall mean the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

**"Creditor"** shall mean any person having a Claim against Debtor.

**"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

**"Debtor"** shall mean Innovate Loan Servicing Corporation, a Texas corporation.

**"Disbursing Agent"** shall mean Preston Miller, individually, or such other entity or person as the Court mandates.

**"Effective Date"** means the date selected by Debtor which is a Business Day at least 15 calendar days following the Confirmation Date on which no stay of the Confirmation Order is in effect.

**"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

**"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

**"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

**"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

**"Pro Rata"** means proportionately so that, with respect to a Claim, the ratio of: (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims in the Class or Classes entitled to share in the applicable distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

**"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

**"Reorganized Debtor"** shall mean the Debtor upon confirmation of the Plan as provided herein.

**"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

**"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183, in this case, Areya Holder Aurzada.

**"Substantial Consummation"** shall occur upon the Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

**"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

**"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

**"Unsecured Claim Distribution Fund"** shall mean the balance of the Plan Cash Fund after payment of (or reasonable reserves for) (a) Allowed Administrative Claims (including, without limitation, Professional Fee Claims), (b) Cure Payments; (c) Allowed Priority Tax Claims, (d) Statutory Fees; (e) Allowed Claims in Class 1, Class 2 and Class 3A; and (f) the fees, costs and expenses of the Plan Cash Fund and the Disbursing Agent.

Dated: November 4, 2024                    Respectfully submitted,

                                           INNOVATE LOAN SERVICING
                                           CORPORATION, a Texas corporation

                          11/4/2024

                                           By: _Preston Miller_____
                                                Preston Miller, President

                                           CAR CAPITAL TECHNOLOGIES, INC.,
                                           A Delaware Corporation

                          11/4/2024

                                           By: _John McWilliams_____
                                                John McWilliams
                                                Chief Financial Officer

Docusign Envelope ID: A9AAD9B3-08A0-4963-A7DE-3A01920DBBA1

## EXHIBIT A
## ORGANIZATION CHART



**EXHIBIT B**
**HISTORICAL OPERATING REPORTS**

Innovate Loan Servicing Corporation
Balance Sheet

Exhibit B1

Unaudited
Confidential - Internal Use Only

| | Aug-23 | Sep-23 | Oct-23 | Nov-23 | Dec-23 | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | | | | | | | |
| **Current Assets** | | | | | | | | | | | | | |
| Cash and Cash Equivalent | 180,933 | 381,160 | 281,102 | 289,091 | 240,677 | 299,585 | 330,719 | 25,945 | 106,922 | 73,728 | 191,620 | 258,765 | 177,081 |
| Investment Finance Receivables | 259,526 | 263,268 | 227,847 | 194,928 | 174,348 | 159,976 | 146,835 | 140,241 | 135,565 | 126,930 | 114,483 | 102,032 | 94,664 |
| Account Receivables | 578,633 | 543,414 | 500,864 | 442,901 | 368,450 | 404,401 | 375,157 | 450,612 | 405,916 | 367,834 | 285,741 | 285,617 | 289,135 |
| Total Current Assets | 1,019,092 | 1,187,842 | 1,009,813 | 926,921 | 783,476 | 863,961 | 852,711 | 616,798 | 648,403 | 568,492 | 591,844 | 646,414 | 560,879 |
| | | | | | | | | | | | | | |
| Fixed Assets | 353,913 | 337,921 | 321,928 | 305,936 | 289,944 | 273,951 | 275,674 | 259,190 | 242,705 | 226,221 | 209,736 | 193,252 | 176,899 |
| | | | | | | | | | | | | | |
| LOC Receivable | 308,945 | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) |
| | | | | | | | | | | | | | |
| Other Assets | 646,809 | 627,499 | 610,189 | 592,878 | 76,501 | 69,141 | 61,781 | 54,421 | 47,061 | 48,088 | 109,341 | 102,025 | 150,842 |
| | | | | | | | | | | | | | |
| Investment in Trusts | 1,466,466 | 1,345,558 | 1,326,256 | 891,590 | 132,420 | 111,997 | 96,193 | 85,562 | 84,189 | 75,979 | 66,713 | 66,713 | 66,713 |
| | | | | | | | | | | | | | |
| TOTAL ASSETS | 3,795,224 | 3,498,819 | 3,268,186 | 2,717,325 | 1,282,341 | 1,319,050 | 1,286,360 | 1,015,972 | 1,022,359 | 918,780 | 977,636 | 1,008,405 | 955,333 |
| | | | | | | | | | | | | | |
| **LIABILITIES & EQUITY** | | | | | | | | | | | | | |
| **Liabilities** | | | | | | | | | | | | | |
| **Current Liabilities** | | | | | | | | | | | | | |
| Accounts Payable | 2,136,769 | 2,108,847 | 2,035,752 | 2,043,460 | 2,067,946 | 2,601,723 | 1,055,887 | 829,454 | 905,550 | 829,767 | 673,982 | 783,838 | 849,252 |
| Accrued Liabilities | 688,084 | 697,161 | 637,618 | 263,498 | 310,967 | 258,766 | 162,061 | 91,481 | 80,807 | 77,894 | 112,885 | 98,478 | 27,862 |
| Total Current Liabilities | 2,824,853 | 2,806,008 | 2,673,370 | 2,306,958 | 2,378,913 | 2,860,489 | 1,217,949 | 920,936 | 986,357 | 907,661 | 786,867 | 882,315 | 877,114 |
| | | | | | | | | | | | | | |
| Other Liabilities | 67,503 | 68,594 | 69,685 | 70,776 | 71,867 | 72,958 | 10,911 | 12,002 | 13,093 | 13,655 | 14,217 | 14,778 | 15,340 |
| Other Liabilities - Inactive | - | - | - | - | - | (145,138) | 1,619,771 | 1,639,797 | 1,642,797 | 1,646,029 | 1,963,790 | 1,976,294 | 1,969,790 |
| | | | | | | | | | | | | | |
| LOC Payable | 300,347 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Liabilities | 3,192,703 | 2,874,602 | 2,743,055 | 2,377,734 | 2,450,780 | 2,788,309 | 2,848,631 | 2,572,735 | 2,642,248 | 2,567,345 | 2,764,873 | 2,873,387 | 2,862,244 |
| | | | | | | | | | | | | | |
| Member's Equity | 602,521 | 624,218 | 525,131 | 339,590 | (1,168,440) | (1,469,258) | (1,562,270) | (1,556,764) | (1,619,889) | (1,648,566) | (1,787,238) | (1,864,983) | (1,906,911) |
| | | | | | | | | | | | | | |
| TOTAL LIABILITIES & EQUITY | 3,795,224 | 3,498,819 | 3,268,186 | 2,717,325 | 1,282,341 | 1,319,050 | 1,286,360 | 1,015,972 | 1,022,359 | 918,780 | 977,636 | 1,008,405 | 955,333 |
| | - | - | - | - | - | - | - | - | - | - | - | - | - |

Innovate Loan Servicing Corporation
Statement of Operations
Unaudited

| | Aug-23 | Sep-23 | Oct-23 | Nov-23 | Dec-23 | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUE** | | | | | | | | | | | | | |
| Finance Charge Income | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Interest Expense | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Interest Margin | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | | | | | | | | | | | | | |
| Asset Impairment | 5,752 | 23,977 | (2,898) | 12,159 | (1,239,196) | 32,225 | 25,205 | 109,562 | 69,550 | 37,616 | 6,073 | 40,604 | 12,561 |
| Net Risk Adjusted Interest Margin | 5,752 | 23,977 | (2,898) | 12,159 | (1,239,196) | 32,225 | 25,205 | 109,562 | 69,550 | 37,616 | 6,073 | 40,604 | 12,561 |
| | | | | | | | | | | | | | |
| Extinguishment of debt | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Income from Investment in Trusts | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net income from legacy business | 5,752 | 23,977 | (2,898) | 12,159 | (1,239,196) | 32,225 | 25,205 | 109,562 | 69,550 | 37,616 | 6,073 | 40,604 | 12,561 |
| | | | | | | | | | | | | | |
| Origination Services Revenue | 2,846 | 60,536 | 2,977 | 4,029 | 1,646 | 2,102 | 636 | 175 | 437 | 248 | 111 | - | - |
| Portfolio Services Revenue | 345,056 | 362,321 | 334,255 | 266,951 | 274,178 | 261,495 | 292,363 | 262,073 | 252,386 | 247,352 | 228,484 | 182,820 | 204,147 |
| Remarketing Services Revenue | 22,051 | 21,069 | 22,516 | 19,769 | 19,040 | 17,850 | 18,595 | 21,908 | 20,490 | 14,828 | 12,003 | 14,291 | 8,240 |
| Lending Operations Revenue,net | 5,055 | 460 | - | - | - | - | - | - | - | - | - | - | - |
| Total Revenue | 375,008 | 444,387 | 359,748 | 290,749 | 294,864 | 281,447 | 311,594 | 284,156 | 273,314 | 262,428 | 240,598 | 197,110 | 212,387 |
| | | | | | | | | | | | | | |
| Total Revenues | 380,760 | 468,364 | 356,850 | 302,908 | (944,332) | 313,672 | 336,799 | 393,718 | 342,864 | 300,044 | 246,672 | 237,715 | 224,949 |
| | | | | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | | | | |
| Personnel | 267,706 | 266,819 | 281,430 | 292,469 | 291,844 | 287,898 | 273,558 | 239,806 | 233,952 | 203,714 | 282,264 | 181,768 | 161,429 |
| Marketing | 1,361 | 4,494 | 8,066 | 2,990 | 1,868 | 334 | 25 | 25 | 2,337 | 1,044 | (469) | 25 | - |
| Portfolio | 35,588 | 44,227 | 36,289 | 41,904 | 46,708 | 198,404 | 30,823 | 26,032 | 23,880 | 23,570 | 26,129 | 23,276 | 21,765 |
| Computer | 32,337 | 49,363 | 45,892 | 69,795 | 101,485 | 45,673 | 36,743 | 38,576 | 58,816 | 11,182 | 5,843 | 38,032 | 34,470 |
| Administrative Expense | 49,753 | 47,198 | 44,443 | 44,524 | 74,957 | 47,590 | 52,603 | 45,922 | 47,735 | 49,253 | 34,752 | 35,233 | 14,036 |
| Facilities | 41,562 | 34,566 | 39,818 | 36,767 | 46,836 | 34,591 | 36,060 | 37,850 | 39,269 | 39,958 | 36,825 | 37,126 | 35,176 |
| Total Non-Interest Expenses | 428,307 | 446,667 | 455,937 | 488,449 | 563,698 | 614,490 | 429,811 | 388,211 | 405,989 | 328,721 | 385,344 | 315,459 | 266,876 |
| | | | | | | | | | | | | | |
| Net Income (Loss) before Taxes | (47,546) | 21,697 | (99,087) | (185,541) | (1,508,030) | (300,818) | (93,012) | 5,507 | (63,125) | (28,677) | (138,672) | (77,745) | (41,928) |
| | | | | | | | | | | | | | |
| Income Tax Expense (Benefit) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | | | | | | | | | | | | | |
| Net Income (Loss) | (47,546) | 21,697 | (99,087) | (185,541) | (1,508,030) | (300,818) | (93,012) | 5,507 | (63,125) | (28,677) | (138,672) | (77,745) | (41,928) |

Exhibit B2

### Inovate Loan Servicing Corporation
### Balance Sheet

### Unaudited
### Confidential - Internal Use Only

| ASSETS | As of 12/31/21 | As of 12/31/22 | As of 12/31/23 |
|---|---|---|---|
| Current Assets | | | |
| Cash and Cash Equivalent | $ 2,135,632 | $ 1,936,616 | $ 240,677 |
| Account Receivables | 764,115 | 954,640 | 368,450 |
| Investment Finance Receivables | 679,427 | 386,732 | 174,348 |
| Total Current Assets | 3,579,174 | 3,277,988 | 783,476 |
| | | | |
| Fixed Assets | 549,375 | 432,750 | 289,944 |
| | | | |
| LOC Receivable | - | 2,135,985 | - |
| | | | |
| Other Assets | 1,411,551 | 714,409 | 76,501 |
| | | | |
| Investment in Trusts | 1,168,259 | 1,480,683 | 132,420 |
| | | | |
| TOTAL ASSETS | $ 6,708,359 | $ 8,041,815 | $ 1,282,341 |
| | | | |
| LIABILITIES & EQUITY | | | |
| Liabilities | | | |
| Current Liabilities | | | |
| Accounts Payable | $ 630,738 | $ 2,025,993 | $ 2,067,946 |
| Accrued Liabilities | 462,982 | 1,171,925 | 310,967 |
| Total Current Liabilities | 1,093,720 | 3,197,918 | 2,378,913 |
| | | | |
| Other Liabilities | - | 19,953 | 71,867 |
| | | | |
| PPP Payable | 890,054 | | |
| LOC Payable | - | 2,154,417 | - |
| | | | |
| Total Liabilities | 1,983,774 | 5,372,288 | 2,450,780 |
| | | | |
| Member's Equity | 4,724,585 | 2,669,527 | (1,168,440) |
| | | | |
| TOTAL LIABILITIES & EQUITY | $ 6,708,359 | $ 8,041,815 | $ 1,282,341 |
| | - | - | (0) |

**Inovate Loan Servicing Corporation**
**Statement of Operations**

**Unaudited**
**Confidential - Internal Use Only**

|  | Year Ended 12/31/21 | Year Ended 12/31/22 | Year Ended 12/31/23 |
|---|---|---|---|
| REVENUE |  |  |  |
| Finance Charge Income | $ 341,795 | $ 97,937 | $ - |
| Interest Expense | 34,490 | - | - |
| Net Interest Margin | 307,305 | 97,937 | - |
|  |  |  |  |
| Asset Impairment | 157,769 | (167,685) | (1,085,360) |
| Net Risk Adjusted Interest Margin | 465,074 | (69,748) | (1,085,360) |
|  |  |  |  |
| Extinguishment of debt | - | 899,144 | - |
| Income from Investment in Trusts | - | 497,136 | 3,874 |
| Net income from legacy business | - | 1,396,280 | 3,874 |
|  |  |  |  |
|  |  |  |  |
| Origination Services Revenue | 669,416 | 870,911 | 133,045 |
| Portfolio Services Revenue | 2,722,601 | 4,386,674 | 4,144,801 |
| Remarketing Services Revenue | 964,840 | 773,933 | 266,658 |
| Lending Operations Revenue,net | - | (516,472) | (118,214) |
| Total Revenue | 4,356,857 | 5,515,046 | 4,426,289 |
|  |  |  |  |
| Total Revenues | 4,821,931 | 6,841,577 | 3,344,803 |
|  |  |  |  |
| EXPENSES |  |  |  |
| Personnel | 4,088,585 | 3,558,382 | 3,665,498 |
| Marketing | 39,154 | 61,848 | 54,651 |
| Portfolio | 1,521,961 | 2,059,188 | 1,472,055 |
| Computer | 736,215 | 1,333,621 | 831,580 |
| Administrative Expense | 723,598 | 1,080,608 | 624,841 |
| Facilities | 791,171 | 802,988 | 534,144 |
| Total Non-Interest Expenses | 7,900,684 | 8,896,636 | 7,182,770 |
|  |  |  |  |
| Net Income (Loss) before Taxes | (3,078,753) | (2,055,058) | (3,837,967) |
|  |  |  |  |
| Income Tax Expense (Benefit) | 2,708,188 | - | - |
|  |  |  |  |
| Net Income (Loss) | $ (5,786,941) | $ (2,055,058) | $ (3,837,967) |

**Inovate Loan Servicing Corporation**
**Statement of Cash Flows**

**Unaudited**
**Confidential - Internal Use Only**

|  | Year Ended 12/31/21 | Year Ended 12/31/22 | Year Ended 12/31/23 |
|---|---|---|---|
| Net income | $ (5,786,941) | $ (2,055,058) | $ (3,837,967) |
| Depreciation and Amortization | 277,309 | 299,380 | 201,120 |
| Deferred financing costs | - | 401,496 | 110,201 |
| Straight Line Rent | - | 13,726 | (64,747) |
| Extinguishment of debt |  | (890,054) | - |
| Change in : |  |  |  |
| Other Changes | 5,580,845 |  |  |
| Servicing fee receivables | 190,557 | (190,525) | 586,190 |
| Other assets | (21,488) | 295,645 | 527,707 |
| Accounts payable and accrued expenses | 65,316 | 2,110,425 | (702,344) |
| From operations | 305,598 | (14,965) | (3,179,841) |
| Collections of receivables |  | 292,697 | 212,384 |
| Net change in LOC Receivable |  | (2,135,985) | 2,135,985 |
| Net change in LOC Payable |  | 2,154,417 | (2,154,417) |
| Investment in private company | 1,219,831 | (312,424) | 1,348,263 |
| Property and equipment | (60,398) | (182,755) | (58,313) |
| From investing | 1,159,433 | (184,050) | 1,483,902 |
| Distributions | - | - | - |
| Change in credit facility | (111,778) |  |  |
| From financing | (111,778) | - | - |
| Change in cash | 1,353,253 | (199,016) | (1,695,938) |
| Beginning cash | 782,379 | 2,135,632 | 1,936,616 |
| Ending cash | $ 2,135,632 | $ 1,936,616 | $ 240,677 |

**EXHIBIT C**
**FINANCIAL PROJECTIONS**

| Income Statement | | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 | Aug-25 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Servicing Income** | | | | | | | | | | | | | |
| Portfolio servicing income | | $ 188,171 | $ 180,363 | $ 173,629 | $ 168,698 | $ 178,939 | $ 174,762 | $ 171,109 | $ 167,989 | $ 165,398 | $ 163,357 | $ 161,889 | $ 161,019 |
| Remarketing income | | 25,093 | $ 24,138 | $ 23,286 | $ 22,581 | $ 23,890 | $ 23,254 | $ 22,671 | $ 22,142 | $ 21,664 | $ 21,240 | $ 20,869 | $ 20,553 |
| Origination services | | $ - | $ - | $ 625 | $ 14,438 | $ 40,888 | $ 17,613 | $ 19,350 | $ 21,363 | $ 23,388 | $ 25,700 | $ 28,300 | $ 31,188 |
| Impairment Recovery | | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Other Income | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Gain on debt settlement | | $ 2,100,646 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Servicing Income** | | $ 2,318,910 | $ 209,501 | $ 202,540 | $ 210,717 | $ 243,717 | $ 215,629 | $ 213,130 | $ 211,494 | $ 210,450 | $ 210,297 | $ 211,058 | $ 212,760 |
| Personnel Expense | | $ 172,716 | $ 170,708 | $ 162,656 | $ 161,059 | $ 174,310 | $ 165,798 | $ 164,398 | $ 163,100 | $ 161,901 | $ 160,800 | $ 159,798 | $ 161,230 |
| Marketing Expense | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Portfolio Expense | | 4,953 | $ 5,359 | $ 4,781 | $ 4,720 | $ 5,270 | $ 4,872 | $ 4,829 | $ 4,793 | $ 4,763 | $ 4,740 | $ 3,723 | $ 3,712 |
| Computer Expense | | 30,026 | $ 19,629 | $ 23,871 | $ 19,638 | $ 19,410 | $ 21,778 | $ 17,540 | $ 17,540 | $ 21,778 | $ 25,530 | $ 14,862 | $ 19,667 |
| Administrative Expense | | 29,504 | $ 28,220 | $ 28,213 | $ 28,211 | $ 29,025 | $ 29,025 | $ 29,025 | $ 36,742 | $ 29,025 | $ 29,025 | $ 29,025 | $ 29,025 |
| Facilities Expense | | 37,146 | $ 23,618 | $ 21,446 | $ 21,446 | $ 20,718 | $ 20,546 | $ 20,546 | $ 20,718 | $ 20,562 | $ 20,562 | $ 20,734 | $ 15,562 |
| Interest Expense | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Operating Expenses** | | $ 274,345 | $ 247,534 | $ 240,967 | $ 235,074 | $ 248,733 | $ 242,019 | $ 236,338 | $ 242,893 | $ 238,029 | $ 240,657 | $ 228,142 | $ 229,196 |
| **Income before Taxes** | | $ 2,044,565 | $ (38,033) | $ (38,427) | $ (24,357) | $ (5,016) | $ (26,390) | $ (23,208) | $ (31,399) | $ (27,579) | $ (30,360) | $ (17,084) | $ (16,436) |
| Tax Benefit (Expense) | 28% | | | | | $ 1,404 | $ 7,389 | $ 6,498 | $ 8,792 | $ 7,722 | $ 8,501 | $ 4,784 | $ 4,602 |
| **Net Income/(Loss)** | | $ 2,044,565 | $ (38,033) | $ (38,427) | $ (24,357) | $ (3,612) | $ (19,001) | $ (16,710) | $ (22,607) | $ (19,857) | $ (21,859) | $ (12,300) | $ (11,834) |
| Depreciaton | | $ 16,352 | $ 14,702 | $ 14,702 | $ 14,702 | $ 13,802 | $ 13,802 | $ 13,802 | $ 13,802 | $ 13,802 | $ 13,802 | $ 13,802 | $ 8,802 |
| Non cash Gain | | $ (2,100,646) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Taxes payable | | $ - | $ - | $ - | $ - | $ (1,404) | $ (7,389) | $ (6,498) | $ (8,792) | $ (7,722) | $ (8,501) | $ (4,784) | $ (4,602) |
| Interest | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **EBITDA** | | $ (39,729) | $ (23,331) | $ (23,725) | $ (9,655) | $ 8,786 | $ (12,588) | $ (9,406) | $ (17,597) | $ (13,777) | $ (16,558) | $ (3,282) | $ (7,634) |
| 36 Month Cumulative Cashflow | | $ 601,592 | | | | | | | | | | | |
| NPV of cashflow | 12.0% | $ 404,808 | | | | | | | | | | | |

| Income Statement | | Sep-25 | Oct-25 | Nov-25 | Dec-25 | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 | Jul-26 | Aug-26 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Servicing Income** | | | | | | | | | | | | | |
| Portfolio servicing income | | $ 160,765 | $ 161,153 | $ 162,204 | $ 163,954 | $ 166,455 | $ 169,739 | $ 173,870 | $ 178,907 | $ 184,800 | $ 191,045 | $ 197,669 | $ 204,703 |
| Remarketing income | | $ 20,293 | $ 20,090 | $ 19,944 | $ 19,858 | $ 19,835 | $ 19,877 | $ 19,987 | $ 20,170 | $ 20,422 | $ 20,706 | $ 21,024 | $ 21,379 |
| Origination services | | $ 34,363 | $ 37,825 | $ 41,575 | $ 45,625 | $ 50,238 | $ 55,150 | $ 60,638 | $ 66,700 | $ 72,238 | $ 72,588 | $ 72,975 | $ 73,400 |
| Impairment Recovery | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Other Income | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Gain on debt settlement | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Servicing Income** | | $ 215,421 | $ 219,068 | $ 223,723 | $ 229,437 | $ 236,528 | $ 244,766 | $ 254,495 | $ 265,777 | $ 277,460 | $ 284,339 | $ 291,668 | $ 299,482 |
| Personnel Expense | | $ 160,426 | $ 159,721 | $ 159,116 | $ 158,613 | $ 203,825 | $ 203,525 | $ 205,991 | $ 208,331 | $ 208,373 | $ 209,137 | $ 210,400 | $ 211,785 |
| Marketing Expense | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Portfolio Expense | | $ 3,708 | $ 4,211 | $ 3,720 | $ 3,737 | $ 4,185 | $ 3,867 | $ 3,906 | $ 3,953 | $ 4,009 | $ 4,069 | $ 4,135 | $ 4,206 |
| Computer Expense | | $ 14,862 | $ 14,862 | $ 19,100 | $ 14,862 | $ 15,991 | $ 19,264 | $ 15,494 | $ 15,594 | $ 19,264 | $ 24,876 | $ 16,565 | $ 19,264 |
| Administrative Expense | | $ 29,025 | $ 29,025 | $ 29,025 | $ 29,025 | $ 29,863 | $ 29,863 | $ 29,863 | $ 37,580 | $ 29,863 | $ 29,863 | $ 29,863 | $ 29,863 |
| Facilities Expense | | $ 15,562 | $ 17,734 | $ 15,562 | $ 15,562 | $ 15,734 | $ 15,562 | $ 15,562 | $ 15,734 | $ 15,001 | $ 15,001 | $ 15,173 | $ 15,001 |
| Interest Expense | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Operating Expenses** | | $ 223,583 | $ 225,553 | $ 226,523 | $ 221,799 | $ 269,598 | $ 272,081 | $ 270,816 | $ 281,192 | $ 276,510 | $ 282,946 | $ 276,136 | $ 280,119 |
| **Income before Taxes** | | $ (8,162) | $ (6,485) | $ (2,800) | $ 7,638 | $ (33,070) | $ (27,315) | $ (16,321) | $ (15,415) | $ 950 | $ 1,393 | $ 15,532 | $ 19,363 |
| **Tax Benefit (Expense)** | 28% | $ 2,285 | $ 1,816 | $ 784 | $ (2,139) | $ 9,260 | $ 7,648 | $ 4,570 | $ 4,316 | $ (266) | $ (390) | $ (4,349) | $ (5,422) |
| **Net Income/(Loss)** | | $ (5,877) | $ (4,669) | $ (2,016) | $ 5,499 | $ (23,810) | $ (19,667) | $ (11,751) | $ (11,099) | $ 684 | $ 1,003 | $ 11,183 | $ 13,941 |
| Depreciaton | | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 |
| Non cash Gain | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Taxes payable | | $ (2,285) | $ (1,816) | $ (784) | $ 2,139 | $ (9,260) | $ (7,648) | $ (4,570) | $ (4,316) | $ 266 | $ 390 | $ 4,349 | $ 5,422 |
| Interest | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **EBITDA** | | $ 640 | $ 2,317 | $ 6,002 | $ 16,440 | $ (24,268) | $ (18,513) | $ (7,519) | $ (6,613) | $ 9,752 | $ 10,195 | $ 24,334 | $ 28,165 |

36 Month Cumulative Cashflow

NPV of cashflow          12.0%

| Income Statement | | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 | Jul-27 | Aug-27 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Servicing Income** | | | | | | | | | | | | | |
| Portfolio servicing income | | $ 212,176 | $ 220,127 | $ 228,604 | $ 237,660 | $ 247,349 | $ 257,725 | $ 268,852 | $ 280,814 | $ 293,683 | $ 307,551 | $ 321,637 | $ 335,481 |
| Remarketing income | | $ 21,771 | $ 22,203 | $ 22,679 | $ 23,202 | $ 23,774 | $ 24,402 | $ 25,086 | $ 25,835 | $ 26,653 | $ 27,547 | $ 28,459 | $ 29,359 |
| Origination services | | $ 73,863 | $ 74,375 | $ 74,938 | $ 75,563 | $ 76,250 | $ 77,000 | $ 77,825 | $ 78,738 | $ 79,738 | $ 80,838 | $ 81,250 | $ 81,250 |
| Impairment Recovery | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Other Income | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Gain on debt settlement | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Servicing Income** | | $ 307,810 | $ 316,705 | $ 326,221 | $ 336,425 | $ 347,373 | $ 359,127 | $ 371,763 | $ 385,387 | $ 400,074 | $ 415,936 | $ 431,346 | $ 446,090 |
| Personnel Expense | | $ 213,297 | $ 214,947 | $ 216,746 | $ 224,421 | $ 251,053 | $ 253,443 | $ 256,042 | $ 258,870 | $ 261,947 | $ 272,055 | $ 278,787 | $ 282,151 |
| Marketing Expense | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Portfolio Expense | | $ 4,283 | $ 4,867 | $ 4,459 | $ 4,557 | $ 5,092 | $ 4,861 | $ 4,988 | $ 5,126 | $ 5,276 | $ 5,440 | $ 5,607 | $ 5,770 |
| Computer Expense | | $ 15,026 | $ 15,026 | $ 19,432 | $ 15,930 | $ 16,496 | $ 19,602 | $ 15,364 | $ 15,647 | $ 20,378 | $ 27,662 | $ 17,390 | $ 23,534 |
| Administrative Expense | | $ 29,863 | $ 29,863 | $ 29,863 | $ 29,863 | $ 30,725 | $ 30,725 | $ 30,725 | $ 38,442 | $ 30,725 | $ 30,725 | $ 30,725 | $ 30,725 |
| Facilities Expense | | $ 15,001 | $ 17,173 | $ 15,001 | $ 15,001 | $ 15,001 | $ 15,001 | $ 15,001 | $ 15,001 | $ 15,001 | $ 15,001 | $ 15,001 | $ 15,001 |
| Interest Expense | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Operating Expenses** | | $ 277,470 | $ 281,876 | $ 285,501 | $ 289,772 | $ 318,367 | $ 323,632 | $ 322,120 | $ 333,086 | $ 333,327 | $ 350,883 | $ 347,510 | $ 357,181 |
| **Income before Taxes** | | $ 30,340 | $ 34,829 | $ 40,720 | $ 46,653 | $ 29,006 | $ 35,495 | $ 49,643 | $ 52,301 | $ 66,747 | $ 65,053 | $ 83,836 | $ 88,909 |
| Tax Benefit (Expense) | 28% | $ (8,495) | $ (9,752) | $ (11,402) | $ (13,063) | $ (8,122) | $ (9,939) | $ (13,900) | $ (14,644) | $ (18,689) | $ (18,215) | $ (23,474) | $ (24,895) |
| **Net Income/(Loss)** | | $ 21,845 | $ 25,077 | $ 29,318 | $ 33,590 | $ 20,884 | $ 25,556 | $ 35,743 | $ 37,657 | $ 48,058 | $ 46,838 | $ 60,362 | $ 64,014 |
| Depreciaton | | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 | $ 8,802 |
| Non cash Gain | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Taxes payable | | $ 8,495 | $ 9,752 | $ 11,402 | $ 13,063 | $ 8,122 | $ 9,939 | $ 13,900 | $ 14,644 | $ 18,689 | $ 18,215 | $ 23,474 | $ 24,895 |
| Interest | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **EBITDA** | | $ 39,142 | $ 43,631 | $ 49,522 | $ 55,455 | $ 37,808 | $ 44,297 | $ 58,445 | $ 61,103 | $ 75,549 | $ 73,855 | $ 92,638 | $ 97,711 |

36 Month Cumulative Cashflow
NPV of cashflow                    12.0%

# EXHIBIT D
# LIQUIDATION ANALYSIS

Innovate Loan Servicing Corporation
Case No. 24-42243 (Bankr. N.D. Tex.)
**LIQUIDATION ANALYSIS**

**ASSETS**

| Description | per Schedules | Book Value (as of 10/1/2024) | Liquidation Value (as of 10/1/2024) | Realization % |
|---|---|---|---|---|
| Wells Fargo Checking | 157,955.00 | $ 167,452.30 | $ 167,452.30 | 100.00% |
| Wells Fargo - Trust collections | | $ 19,372.75 | $ - | 0.00% |
| Mercantile Partneres, L.P. Deposit | 17,647.50 | $ 17,647.50 | $ - | 0.00% |
| Prepaid Insurance | 22,000.00 | $ 54,895.17 | $ - | 0.00% |
| Prepaid Legal | | $ 75,000.00 | $ - | 0.00% |
| Accounts Receivable | 400,224.00 | $ 287,802.00 | $ 224,654.42 | 78.06% |
| Finance Receivables | | $ 70,063.82 | $ 3,503.19 | 5.00% |
| Fixed Assets | 32,709.00 | $ 161,176.53 | $ - | 0.00% |
| Backup Servicing Receivable | 6,000.00 | $ (113.98) | $ - | 0.00% |
| Investment in Trust (Medalist) | 66,713.44 | $ 66,713.44 | $ - | 0.00% |
| | | | | |
| Total Assets | $703,248.94 | $ 920,009.53 | $ 395,609.91 | |

Chapter 7 Expenses

| | | | | |
|---|---|---|---|---|
| Chapter 7 Trustee Fee | | | $ 23,030.50 | |
| Chapter 7 Professional Fees | | | $ 12,000.00 | |
| TOTAL: | | | $ 35,030.50 | |

Chapter 11 Administrative Expenses

| | | | | |
|---|---|---|---|---|
| US Trustee Fees | | | $ - | |
| Subchapter V Trustee Fees | | | $ 5,000.00 | |
| Professional Fees (net of Retainer Deposits) | | | $ 15,000.00 | |
| Unpaid Operating Expenses | | | $ 106,334.19 | |
| TOTAL: | | | $ 126,334.19 | |

Priority Tax Claims
Other Priority Unsecured Claims

| | | | | |
|---|---|---|---|---|
| NET AVAILABLE FOR GENERAL UNSECURED CREDITORS | | | $ 234,245.23 | |

## EXHIBIT E
## ASSUMED CONTRACTS

| Vendor Name | Contract Description | Cure Amount |
|---|---|---|
| LOANPRO SOFTWARE LLC | Loan management system | $48,113.95 |
| FORTEGRA INSURANCE | Premium finance for corporate insurance | $0.00 |
| TTEC Digital, LLC fka Avtex Solutions, LLC | Dialer system used in servicing | $25,498.81 |
| Adrytech, LLC | Cyber security/software licensing provider | $23,475.36 |
| Mercantile Partners, L.P | Landlord utilities bills | $3,065.18 |
| AT&T Mobility | Corporate internet provider | $9,077.00 |
| CIT-First-Citizens Bank & Trust Co | Lease for laptops | $10,445.88 |
| Recovery Database Network | Repossession agent management system | $5,520.76 |
| Box, Inc | Electronic document storage | $2,086.70 |
| Paymentus Group Inc | Consumer payment processing partner | $3,519.00 |
| The Hartford | Corporate insurance provider | $0.00 |
| BAI | Corporate training provider | $0.00 |
| Auto Auction Services Corporation | Auction remarketing system | $1,691.00 |
| CALLTOWER | Desktop phone system provider | $1,728.77 |
| Guardian | Benefit provider | $0.00 |
| CarFax | Car data source | $1,667.75 |
| Decision Dynamics LLC | Electronic title vendor | $1,198.65 |
| HOLDER LAW | Trustee | $0.00 |
| PhinSolutions | Consumer BK information service | $650.40 |
| DALLAS SECURITY SYTEMS | Physical security provided at Meacham Blvd | $239.50 |
| e-OSCAR | Consumer complaint/dispute service | $127.92 |
| EQUIFAX Verification Services | Consumer credit reporting service | $140.72 |

DS
*PM*

Initial
*JM*

$138,247.35

## Supplemental Assumed Contracts

| Name | Description | Cure Amount | Name | Attn | Address | City | State | Zip |
|---|---|---|---|---|---|---|---|---|
| AEGIS | Portfolio servicing agreement | $ - | Aegis Automotive Finance Company | Attn: Jared Cunningham | P.O. Box 720605 | Norman | OK | 73070 |
| ATLANTIC ACCEPTANCE CORP | Portfolio servicing agreement | $ - | Atlantic Acceptance Corp | Attn: Ryan Rochefort | 800 Village Square Crossing Suite 350 | Palm Beach Gardens | FL | 33410 |
| AUCTION DIRECT | Portfolio servicing agreement | $ - | Auction Direct | Attn: Dean Rudy | 6520 State Route 96 | Victor | NY | 14564 |
| CARLY FINANCIAL | Portfolio servicing agreement | $ - | Carly Financial, | Attn: Eric Pitt | 17305 S Dixie Hwy | Palmetto Bay | FL | 33157 |
| EDGE FOCUS | Portfolio servicing agreement | $ - | Edge Focus High yield Fund, LP | Attn: Elliott Lorenz | 1185 Avenue of the Americas | New York | NY | 10036 |
| INN FIN SER | Portfolio servicing agreement | $ - | INN FIN SER | Attn: Garry Bog | 17395 N Bay RD. #210 | Sunny Isles Beach | FL | 33160 |
| KARMA | Portfolio servicing agreement | $ - | Karma Auto Trust, c/o UTI Trustee, the Administrative Trustee or the Delaware Trustee, Wilmington trust, National Association | Attn: Corporate Trust Administ | Rodney Square North, 1100 North Market Street | Wilmington | DE | 19890 |
| KARUS_MEDALIST | Portfolio servicing agreement | $ - | Medalist Partners Asset-Based Private Credit Master Fund III-A L.P. | Attn: james Murname | 777 Third Avenue, Suite 1402 | New York | NY | 10077 |
| MEDALIST | Portfolio servicing agreement | $ - | Medalist Partners Asset-Based Private Credit Master Fund III-A L.P. | | 777 Third Avenue, Suite 1402 | New York | NY | 10077 |
| PAGAYA - ISRAEL | Portfolio servicing agreement | $ - | Pagaya Auto Loan Trust | Attn: Navid | 135 E 57th St. | New York | NY | 10022 |
| PAGAYA - MRT | Portfolio servicing agreement | $ - | Pagaya Auto Loan Trust | Attn: Navid | 135 E 57th St. | New York | NY | 10022 |
| PAGAYA - PALT | Portfolio servicing agreement | $ - | Pagaya Auto Loan Trust | Attn: Navid | 135 E 57th St. | New York | NY | 10022 |
| PAGAYA - PALT2 | Portfolio servicing agreement | $ - | Pagaya Auto Loan Trust | Attn: Navid | 135 E 57th St. | New York | NY | 10022 |
| PAGAYA - RPMIV | Portfolio servicing agreement | $ - | Pagaya Auto Loan Trust | Attn: Navid | 135 E 57th St. | New York | NY | 10022 |
| PAGAYA - RPMV | Portfolio servicing agreement | $ - | Pagaya Auto Loan Trust | Attn: Navid | 135 E 57th St. | New York | NY | 10022 |
| PAGAYA - RPMVI | Portfolio servicing agreement | $ - | Pagaya Auto Loan Trust | Attn: Navid | 135 E 57th St. | New York | NY | 10022 |
| PAGAYA - RPMVIII | Portfolio servicing agreement | $ - | Pagaya Auto Loan Trust | Attn: Navid | 135 E 57th St. | New York | NY | 10022 |
| PAGAYA - SECURITIES HOLDINGS TRUST | Portfolio servicing agreement | $ - | Pagaya Auto Loan Trust | Attn: Navid | 135 E 57th St. | New York | NY | 10022 |
| PAGAYA 2023-02 | Portfolio servicing agreement | $ - | Pagaya Auto Loan Trust | Attn: Navid | 135 E 57th St. | New York | NY | 10022 |
| YSG | Portfolio servicing agreement | $ - | Yield Solutions Group, LLC | Attn: Mark Schwartz | 5775 DTC Blvd. #400 | Greenwood Village | CO | 80111 |

DS          Initial



## EXHIBIT F
## PAYMENTS TO CREDITORS WITHIN 90 DAYS PRIOR TO PETITION DATE

Case 24-42243-mxm11   Doc 41   Filed 07/16/24   Entered 07/16/24 14:01:27   Desc Main
SOFA 3 - Payments to Creditors within 90 days prior to Page 3 of 18

| Description | Mar | Apr | May | Jun | Grand Total |
|---|---|---|---|---|---|
| KM2 Solutions, LLC | $ (92,927.68) | | $ (44,438.03) | $ (40,639.25) | $ (178,004.96) |
| MVRECOVERY NATIONAL | | $ (36,374.54) | $ (17,985.54) | $ (23,957.59) | $ (10,750.00) | $ (89,067.67) |
| Mercantile Partners, L.P | | $ (19,684.75) | $ (19,418.94) | $ (22,911.55) | $ (19,779.02) | $ (81,794.26) |
| CORECOVERY | | $ (34,423.44) | $ (20,250.00) | $ (11,255.00) | | $ (65,928.44) |
| LOANPRO SOFTWARE LLC | | $ (43,610.87) | $ (21,954.52) | | | $ (65,565.39) |
| PAYCOR INC. DD - Fund 117890 669051521502540 INNOVATE LOAN SERVICIN 2311299990 669051521502540 0R000 | | | $ (62,659.71) | | | $ (62,659.71) |
| PAYCOR INC. DD - Fund 117890 251940784694861 INNOVATE LOAN SERVICIN 2311299990 251940784694861 0R000 | | | | $ (61,979.26) | | $ (61,979.26) |
| PAYCOR INC. DD - Fund 117890 661882074068900 INNOVATE LOAN SERVICIN 2311299990 661882074068900 0R000 | $ (61,434.36) | | | | | $ (61,434.36) |
| PAYCOR INC. DD - Fund 117890 XXXXXXXX880520 INNOVATE LOAN SERVICIN 2311299990 XXXXXXXX880520 0R000 | $ (60,450.88) | | | | | $ (60,450.88) |
| PAYCOR INC. DD - Fund 117890 199704582893455 INNOVATE LOAN SERVICIN 2311299990 199704582893455 0R000 | | $ (59,579.28) | | | | $ (59,579.28) |
| PAYCOR INC. DD - Fund 117890 910104166937220 INNOVATE LOAN SERVICIN 2311299990 910104166937220 0R000 | | | | $ (59,274.47) | $ (59,274.47) |
| PAYCOR INC. DD - Fund 117890 183007668219705 INNOVATE LOAN SERVICIN 2311299990 183007668219705 0R000 | | | $ (57,235.00) | | $ (57,235.00) |
| PAYCOR INC. DD - Fund 117890 673213686574830 INNOVATE LOAN SERVICIN 2311299990 673213686574830 0R000 | | | | $ (55,942.81) | $ (55,942.81) |
| Elsker Inc. (dba Fuse) | | $ (16,667.00) | $ (16,667.00) | $ (16,667.00) | | $ (50,001.00) |
| LOANPRO | | | | $ (45,570.63) | | $ (45,570.63) |
| COPART INC | | $ (14,262.08) | $ (18,879.85) | $ (12,417.66) | | $ (45,559.59) |
| TTEC Digital, LLC fka Avtex Solutions, LLC | | $ (14,846.04) | $ (11,203.89) | $ (12,711.86) | | $ (38,761.79) |
| Adrytech, LLC | | $ (21,842.79) | | $ (10,972.73) | | $ (32,815.52) |
| WT FED#01702 JPMORGAN CHASE BAN /FTR/BNF=Culhane, Meadows, Haughian & Walsh, SRF# GW00000068606515 T | | | | $ (25,000.00) | $ (25,000.00) |
| ACH PREP GRAVITY LENDING FUINDING | | $ (24,574.10) | | | $ (24,574.10) |
| HEALTH CARE SERV 0BPPAYMT 030124 6952517766 INNOVATE LOAN SERVICIN 3000027465 6952517766 0R000000910 | $ (24,273.67) | | | | $ (24,273.67) |
| 6111372850 auction proceeds transfer | $ (24,005.00) | | | | $ (24,005.00) |
| HEALTH CARE SERV 0BPPAYMT 032924 7224676793 INNOVATE LOAN SERVICIN 3000027465 7224676793 0R000000910 | $ (23,620.59) | | | | $ (23,620.59) |
| Trans Union LLC | $ (12,774.29) | | $ (6,456.76) | | $ (19,231.05) |
| AT&T Mobility | $ (9,077.00) | $ (4,538.50) | | $ (4,538.50) | $ (18,154.00) |
| PAYCOR INC. tax fund 117890 ZXXXXXXXXX00958 INNOVATE LOAN SERVICIN 1311299990 ZXXXXXXXXX00958 0R0000 | | $ (18,138.84) | | | $ (18,138.84) |
| PAYCOR INC. tax fund 117890 815506547247820 INNOVATE LOAN SERVICIN 1311299990 815506547247820 0R0000 | $ (18,083.16) | | | | $ (18,083.16) |
| HEALTH CARE SERV 0BPPAYMT 053124 9570136520 INNOVATE LOAN SERVICIN 3000027465 9570136520 0R000000910 | | | $ (17,964.93) | | $ (17,964.93) |
| PAYCOR INC. tax fund 117890 100713856818655 INNOVATE LOAN SERVICIN 1311299990 100713856818655 0R0000 | | | $ (17,919.79) | | $ (17,919.79) |
| PAYCOR INC. tax fund 117890 170290163719802 INNOVATE LOAN SERVICIN 1311299990 170290163719802 0R0000 | $ (17,211.74) | | | | $ (17,211.74) |
| PAYCOR INC. tax fund 117890 233236036322216 INNOVATE LOAN SERVICIN 1311299990 233236036322216 0R0000 | | $ (17,142.27) | | | $ (17,142.27) |
| PAYCOR INC. tax fund 117890 153910620873340 INNOVATE LOAN SERVICIN 1311299990 153910620873340 0R0000 | | | | $ (17,103.78) | $ (17,103.78) |
| AMEX EPAYMENT ACH PMT 240530 COP000005820731 CHRISTOPHE CHESTNUT 0005000040 COP000005820731 0O000000 | | | $ (16,835.73) | | $ (16,835.73) |
| PAYCOR INC. tax fund 117890 231514187485930 INNOVATE LOAN SERVICIN 1311299990 231514187485930 0R0000 | | | $ (16,589.53) | | $ (16,589.53) |
| HEALTH CARE SERV 0BPPAYMT 043024 9659108566 INNOVATE LOAN SERVICIN 3000027465 9659108566 0R000000910 | | $ (16,299.11) | | | $ (16,299.11) |
| PAYCOR INC. tax fund 117890 15XXXXXXXXX0374 INNOVATE LOAN SERVICIN 1311299990 15XXXXXXXXX0374 0R0000 | | | | $ (16,151.61) | $ (16,151.61) |
| ALS Resolvion (1st Placement) | $ (6,477.28) | | $ (7,698.23) | | $ (14,175.51) |
| ACH PREP ORIGINTN - INNOVATE LOAN SE - FILE 7878782339 COID 1270785824 1270785824 FILE 7878782339 0S | $ (4,522.17) | $ (4,432.63) | $ (4,264.75) | | $ (13,219.55) |
| CPA TAX PAYMENTS DD 320426575762 EDI/XML - Pass-thru Ac 9440000170 320426575762 0R000000091003831441841 | | | $ (11,984.00) | | $ (11,984.00) |
| AMEX EPAYMENT ACH PMT 240429 COP000005792219 CHRISTOPHE CHESTNUT 0005000040 COP000005792219 0O000000 | | $ (11,468.00) | | | $ (11,468.00) |
| Dealertrack | $ (5,423.89) | $ (5,882.06) | | | $ (11,305.95) |
| STRIKE GRAPH INC | $ (10,660.00) | | | | $ (10,660.00) |
| CIT-First-Citizens Bank & Trust Co | $ (6,684.63) | | $ (3,762.25) | | $ (10,446.88) |
| DALLAS SECURITY SYTEMS | $ (9,768.40) | | | | $ (9,768.40) |
| American Express | $ (9,692.67) | | | | $ (9,692.67) |
| The Morrison Law Firm FLA, PLLC | $ (8,788.00) | | | | $ (8,788.00) |
| CLIENT ANALYSIS SRVC CHRG 240410 SVC CHGE 0324 000004124307117 DP10700543 SVC CHGE 0324 100000009100 | | $ (8,762.98) | | | $ (8,762.98) |
| CLIENT ANALYSIS SRVC CHRG 240510 SVC CHGE 0424 000004124307117 DP10700543 SVC CHGE 0424 100000009100 | | | $ (8,655.76) | | $ (8,655.76) |
| CLIENT ANALYSIS SRVC CHRG 240308 SVC CHGE 0224 000004124307117 DP10700543 SVC CHGE 0224 100000009100 | $ (8,370.07) | | | | $ (8,370.07) |
| Box, Inc | | $ (2,086.70) | | $ (6,260.10) | $ (8,346.80) |
| CLIENT ANALYSIS SRVC CHRG 240610 SVC CHGE 0524 000004124307117 DP10700543 SVC CHGE 0524 100000009100 | | | | $ (8,124.74) | $ (8,124.74) |
| Snowflake Inc. | $ (3,997.50) | | $ (3,997.50) | | $ (7,995.00) |
| BANKDIRECT CAPIT PAYMENTS 240405 17244072 INNOVATE LOAN SERVICIN 2472319830 17244072 0R000000091000415 | | $ (7,776.22) | | | $ (7,776.22) |
| BANKDIRECT CAPIT PAYMENTS 240506 17724010 INNOVATE LOAN SERVICIN 2472319830 17724010 0R000000091000576 | | | $ (7,776.22) | | $ (7,776.22) |
| BANKDIRECT CAPIT PAYMENTS 240305 16740497 INNOVATE LOAN SERVICIN 2472319830 16740497 0R000000910004403 | $ (7,776.22) | | | | $ (7,776.22) |
| DATA OCEANS, LLC | $ (6,106.40) | | $ (1,573.13) | | $ (7,679.53) |
| Venture | $ (5,285.33) | | $ (2,133.52) | | $ (7,418.85) |
| CARFAX BT0404 040424 000000266101502 Innovate Loan Servicin 1251465303 000000266101502 0R00000091006 | | $ (5,482.10) | | | $ (5,482.10) |
| Digital Recognition Network Inc. | $ (2,665.00) | $ (2,665.00) | | | $ (5,330.00) |
| Paymentus Group Inc | $ (2,689.41) | $ (2,414.00) | | | $ (5,103.41) |
| Phantom Asset Recovery Inc | $ (2,860.00) | $ (850.00) | $ (1,325.00) | | $ (5,035.00) |
| Reliable Recovery Serv (IL) | $ (1,745.00) | $ (1,770.00) | $ (1,480.00) | | $ (4,995.00) |
| CARFAX BT0503 050324 000000270381298 Innovate Loan Servicin 1251465303 000000270381298 0R00000091004 | | | $ (4,722.53) | | $ (4,722.53) |
| Datamax | $ (1,364.63) | $ (1,398.30) | $ (1,816.15) | | $ (4,579.08) |